**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| DIANE OMER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  4:22-cv-1285 |
| | § | |
| LIFE INSURANCE COMPANY | § | |
| OF NORTH AMERICA, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PRELIMINARY STATEMENT

1.     Plaintiff DIANE OMER, hereinafter referred to as "Plaintiff," brings this ERISA action against the Life Insurance Company of North America Group Welfare Benefits Plan, in its capacity as Administrator of the Capital One Financial Corporation Long Term Disability Plan, hereinafter referred to as "Defendant".  Plaintiff brings this action to secure all disability benefits, whether they be described as short term, long term and/or waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant.  Plaintiff is covered under the policy by virtue of her employment with Capital One Financial Corporation.

### PARTIES

2.     Plaintiff is a citizen and resident of Henrico, Virginia.

3.     Defendant is a properly organized business entity doing business in the State of Texas.

2

4.      The disability plan at issue in the case at bar was funded and administered by Defendant.

5.      Defendant is a business entity doing business in the Southern District of Texas.  Defendant may be served with process by serving its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-4284.

## JURISDICTION AND VENUE

6.      This court has jurisdiction to hear this claim pursuant to pursuant to 29 U.S.C. § 1132(a), (e), (f), and (g) of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1101, et seq. ("ERISA") and 28 U.S.C. § 1331, as this action involves a federal question. Specifically, Plaintiff brings this action to enforce her rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

7.      Venue in the Southern District of Texas is proper by virtue of Defendant doing business in the Southern District of Texas.   Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2).  Therefore, venue may also be proper under the third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." (*Id.*)  "District courts within the Fifth Circuit have adopted the reasoning outlined by the Ninth Circuit in *Varsic v. United States District*

*Court for the Central District of California*, 607 F.2d 245 (9th Cir. 1979*). See Sanders v. State Street Bank and Trust Company*, 813 F. Supp. 529, 533 (S.D. Tex. 1993).  The Ninth Circuit, in *Varsic*, concluded that whether a defendant "resides or may be found" in a jurisdiction, for ERISA venue purposes, is coextensive with whether a court possesses personal jurisdiction over the defendant.  *Varsic*, 607 F.2d at 248."  See *Frost v. ReliOn, Inc.*, 2007 U.S. Dist. LEXIS 17646, 5-6 (N.D. Tex. Mar. 2, 2007).   Under ERISA's nationwide service of process provision, a district court may exercise personal jurisdiction over the defendant if it determines that the defendant has sufficient ties to the United States.  See *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan, 97 F.3d 822, 825-26 (5th Cir. 1996)*, citing *Busch v. Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255, 1258 (5th Cir. 1994)*.  Here, Defendant is "found" within the Southern District of Texas, as it does business here, and the court has personal jurisdiction over Defendant, as it has sufficient ties to the United States.

## <u>CONTRACTUAL AND FIDUCIARY RELATIONSHIP</u>

8.      At all relevant times, Plaintiff has been a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Long-Term Disability Plan Policy No. FLK-980219.

9.      Plaintiff obtained the disability policy at issue by virtue of Plaintiff's employment with Capital One Financial Corporation, with coverage beginning on November 3, 2018.

10.     Said policy became effective October 1, 2016.

11.     At all relevant times, Defendant has been the claims administrator of the

4

disability policy within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

12.     At all relevant times, Defendant has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

13.     Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

14.     Finally, under its fiduciary duty, Defendant is required to take active steps to reduce bias ensure and ensure claims are conducted in a manner that is consistent with the interests of the claimant's.

15.     Disability benefits under the Plan have been insured in accordance and pursuant to Policy No. FLK-980219 issued by Defendant.

16.     Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

17.     Because the Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

18.     Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's wrongful denial of benefits.

## STANDARD OF REVIEW

19.     In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

20.     Except as stated in paragraph 21 below, benefit denials governed under ERISA are generally reviewed by the courts under a *de novo* standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

21.     In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard and not a "de novo" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

22.     Plaintiff contends that the Plan fails to properly give Defendant discretion under the Policy.

23.     Further, when a Defendant violates the Department of Labor regulations, Defendant effectively forfeits its discretionary authority.

24.     When denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless. *Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ.*, 819 F. 3d 42 (2nd Cir. 2016). See also *Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1001-02 (7th Cir. 2019) and *Slane v. Reliance Stand. Life Ins. Co.*, CV 20-3250, 2021 WL 1401761 (E.D. La. Apr. 14, 2021).

25.     Defendant committed the following violations demonstrating its failure furnish a full and provide review:

i.      Inadequate notice of reasons for denial. 29 C.F.R. § 2560.503-1(g)(1)(i);

ii.     Inadequate notice of the information needed to perfect Plaintiff's appeal. 29 C.F.R. § 2560.503-1(g)(1)(iii);

iii.    Failure to follow Defendant's own claims procedures 29 C.F.R. § 2560.503-1(b);

iv.     Failure to adopt guidelines to ensure that similarly situated claims are administered correctly and consistently. 29 C.F.R. § 2560.503-1(b)(5);

v.      Failure to administrative Plaintiff's claim consistently 29 C.F.R. § 2560.503-1(b)(5);

vi.     Failure to provide requested relevant documents timely. 29 C.F.R. § 2560.503-1(h)(2)(iii);

vii.    Failure to describe the guidelines and protocols relied upon. 29 C.F.R. § 2560.503-1(g)(1)(v) and 29 C.F.R. § 2560.503-1(j)(5);

viii.   Failure to obtain the review of appropriate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(iii);

ix.     Failure to obtain an appeal review of a different non-subordinate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(v);

x.      Failure to obtain an appeal review that does not defer to the prior determination. 29 C.F.R. § 2560.503-1(h)(3)(iii);

xi.     Failure to obtain an appeal review that is conducted by a different non-subordinate individual. 29 C.F.R. § 2560.503-1(h)(3)(iii);

xii.    Failure to give a claimant an opportunity to review and refute the report of a reviewing physician obtained during the appeal review. 29 C.F.R. § 2560.503-1(h)(4);

xiii.   Failure to take into account all comments, documents, records, and other information submitted to the claimant or by the claimant relating to the claim. 29 C.F.R. § 2560.503-1(h)(2)(iv).

26.     Defendant's violations of the regulations were not inadvertent or harmless.

27.     Plaintiff contends that because Defendant failed to furnish a full and fair review, Defendant has relinquished its discretionary authority under the Plan.

28.     Further, Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

## ADMINISTRATIVE APPEAL

29.     Plaintiff is a 53-year-old woman previously employed by Capital One Financial Corporation as a "Customer Service Unit Manager."

30.     Customer Service Unit Manager is classified under the Dictionary of Occupational Titles as having a Sedentary exertional level. This occupation also has an SVP of 6 and is skilled work.

31.     This occupation was very demanding in that it required Plaintiff to provide leadership to service team, including scheduling meetings and/or other communication to review plans and issues of the service unit.   Involve service team members in development and assessment of service unit delivery plans.

32.     Due to Plaintiff's disabling conditions, Plaintiff ceased actively working on April 27, 2018.

33.     Plaintiff alleges that she became disabled on April 30, 2018.

34.     Plaintiff filed for short term disability benefits with Defendant.

35.     Short term disability benefits were approved and paid.

36.     Plaintiff filed for long term disability benefits through the Plan administered by the Defendant.

37.     The Plan defines "Disability" or "Disabled" as follows:

*The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is: 1. unable to perform the material duties of his or her Regular Occupation; and 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation. After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is: 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and 2. unable to earn 80% or more of his or her Indexed Earnings.   The Insurance Company will require proof of earnings and continued Disability.*

38.     The Plan defines "Regular Occupation" as follows:

8

*"Regular Occupation" means the occupation the Employee routinely performs at the time the Disability begins. In evaluating the Disability, the Insurance Company will consider the duties of the occupation as it is normally performed in the general labor market in the national economy. It is not work tasks that are performed for a specific employer or at a specific location.*

39.     The Plan defines "Any Occupation" as follows:

*"Any Occupation" means any occupation in the competitive workforce paying a gainful wage that You could perform considering your age, education, past work experience, and stage in life.*

40.     Long Term Disability benefits were approved from October 3, 2018 to February 2, 2021.

41.     The Plan provides for monthly benefits of $4,081.70.

42.     On January 28, 2021, Defendant terminated Plaintiff's long term disability benefits.

43.     Defendant's termination letter said "Based on the above findings, you do not meet the definition of disability as defined in your policy beyond February 2, 2021" under the Own/Any Occupation definition and allowed Plaintiff 180 days to appeal this decision.

44.     Defendant's termination letter failed to consider Plaintiff's restrictions, limitations, and inability to perform necessary vocational requirements of her own or any occupation related to her medical conditions.

45.     Defendant's termination letter failed to state what specific information was missing and/or necessary for Plaintiff to perfect her appeal. On this front, Defendant's letter states only that, "If there is additional information, documents, or records that you

believe would impact this benefit decision please submit it to us for consideration."

46.     On February 12, 2021, Plaintiff pursued her administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

47.     Plaintiff timely perfected her administrative appeal pursuant to the Plan by sending letter requesting same to the Defendant.

48.     Plaintiff submitted additional information including medical records to show that she is totally disabled from the performance of both her own and any other occupation as defined by the terms of the Plan.

49.     Additionally, the Social Security Administration issued a fully favorable decision on Plaintiff's claim for disability benefits under Title II and Title XVI of the Social Security Act, finding that Plaintiff is "disabled" during the relevant time period. Notably, the SSA's definition of disability is significantly more restrictive than Defendant's as SSA requires the claimant to be unable to work in "any occupation in the National Economy."

50.     Defendant was provided documentation of the Social Security Administration's finding that Plaintiff was found to be totally disabled under Title II and Title XVI of the Social Security Act.

51.     On or about January 22, 2021, Defendant's internal consultant, Nicole Surmacy, MS, CRC, CEAS, rehabilitation specialist, performed a paper review of Plaintiff's claim file.

52.     On or about May 4, 2021 and May 12, 2021, Defendant's paid consultant, Matthew Chan, M.D., ABMS (Dr. Chan), preventive medicine and occupational medicine, performed peer reviews of Plaintiff's claim file.

53.     On or about May 19, 2021, Defendant's internal consultant, Cindy A. Herzog, MS, CRC, rehabilitation specialist, performed a paper review of Plaintiff's claim file.

54.     Defendant's peer reviews of Plaintiff's file are unreliable and unreasonable as a basis for denial because:

a.     Dr. Chan's opinion was infected by conflict and bias;

b.     Dr. Chan's conclusions lack foundation and are conclusory;

c.     Dr. Chan failed to consider the degenerative nature of Plaintiff's condition(s) and the lack of significant improvement;

d.     Dr. Chan lacked appropriate qualifications to comment on Plaintiff's conditions;

e.     Dr. Chan never examined Plaintiff in-person, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

f.     Dr. Chan failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

g.     Dr. Chan failed to acknowledge that medications neither effectively resolved her pain nor were appropriate for long-term treatment of Plaintiff;

h.     Dr. Chan based his opinion on a summary reports of other underqualified opinions; and

i.     Dr. Chan's conclusions were inconsistent with the weight of the evidence.

55.     There is an indication that a "Lona Amirkhanian, RN, NCM," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

56.     There is an indication that a "K. Antram, RN, BSN," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

57.     There is an indication that a "Donna Connelly, MSN, RN," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

58.     There is an indication that a "Kristina DeSantis, MA, CRC," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

59.     There is an indication that a "K. Johnson, LPC, BHS," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

60.     There is an indication that a "Kim Lewis, MA, CRC, CVE," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

61.     There is an indication that a "Jennifer Murdock, RN, BHS," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

62.     There is an indication that a "Andrew Nester, RN, BSN," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

63.     Defendant's consultants completed their reports without examining Plaintiff.

64.     On January 11, 2021, Defendant paid its expert, Krishna Padiyar, M.D., MPH (Dr. Padiyar), occupational medicine, to conduct a defense medical examination "DME" on Plaintiff.

65.     This examination was unreliable and not "independent" as evidenced by:

a.     Dr. Padiyar's opinion was infected by conflict and bias;

b.     Dr. Padiyar's conclusions lack foundation and are conclusory;

c.     Dr. Padiyar failed to consider the degenerative nature of Plaintiff's

condition(s) and the lack of significant improvement;

d.     Dr. Padiyar lacked appropriate qualifications to comment on Plaintiff's conditions;

e.     Dr. Padiyar failed to spend an adequate amount of time examining Plaintiff, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

f.     Dr. Padiyar failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

g.     Dr. Padiyar failed to acknowledge that medications neither effectively resolved her pain nor were appropriate for long-term treatment of Plaintiff;

h.     Dr. Padiyar based his opinion on a summary reports of other underqualified opinions; and

i.     Dr. Padiyar's conclusions were inconsistent with the weight of the evidence.

66.     Defendant notified Plaintiff that Defendant upheld its original decision to deny/terminate Plaintiff's claim for long term disability benefits.

67.     Defendant also notified Plaintiff that Plaintiff had exhausted her administrative remedies.

68.     Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on her ability to engage in work activities.

69.     The Plan gave Defendant the right to have Plaintiff submit to a physical examination at the appeal level.

70.     A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

71.     More information promotes accurate claims assessment.

72.     Plaintiff has now exhausted her administrative remedies, and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

### MEDICAL FACTS

73.     Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments.

74.     Plaintiff suffers from depression; generalized anxiety; multiple suicide attempts; pain in the neck and back; persistent dizziness and imbalance; cognitive issues involving short-term memory loss, attention/concentration deficits, word-finding difficulty, and problems with depth perception; blurred left vison; left facial numbness; and a gunshot wound (GSW) to the side of her face.

75.     Treating physicians document continued chronic pain, radicular symptoms, as well as decreased range of motion and weakness.

76.     Plaintiff's treating physicians have opined that Plaintiff is unable to work.

77.     Plaintiff's treating physicians disagree with Defendant's hired peer reviewers.

78.     Plaintiff's multiple disorders have resulted in restrictions in activity, have severely limited Plaintiff's range of motion, and have significantly curtailed her ability to engage in any form of exertional activity.

79.     Physicians have prescribed Plaintiff with multiple medications, in an effort

to address her multiple symptoms.

80.     However, Plaintiff continues to suffer from breakthrough pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

81.     Plaintiff's documented pain is so severe that it impairs her ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, for an 8-hour day, day after day, week after week, month after month.

82.     Plaintiff's medications cause additional side effects in the form of sedation and cognitive difficulties.

83.     The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

84.     As such, Plaintiff has been and remains disabled per the terms of the Plan and has sought disability benefits pursuant to said Plan.

85.     However, after exhausting her administrative remedies, Defendant persists in denying Plaintiff her rightfully owed disability benefits.

## **DEFENDANT'S CONFLICT OF INTEREST**

86.     At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

87.     Defendant's determination was influenced by its conflict of interest.

88.     Defendant's reviewing experts are not impartial.

89.     Upon information and belief, Defendant's peer reviewers have conducted reviews in connection with numerous other individuals insured by Defendant.

90.     Defendant knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only insurance companies and never individual claimants.

91.     Upon information and belief, Defendant pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for claimants under Defendant's Plan(s).

92.     Upon information and belief, Defendant's reviewing experts receive financial incentive to proffer opinions aiding in Defendant's denial of claims.

93.     Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

<u>**COUNT I:**</u>

<u>**WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132**</u>

94.     Plaintiff incorporates those allegations contained in paragraphs 1 through 93 as though set forth at length herein.

95.     Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

a.     Plaintiff is totally disabled, in that she cannot perform the material duties of her own occupation, and she cannot perform the material duties of any other occupation which her medical condition, education, training, or experience would reasonably allow;

b.     Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled;

c.     Defendant's interpretation of the definition of disability contained in the

policy is contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious; and

d.      Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

## COUNT II:  ATTORNEY FEES AND COSTS

96.      Plaintiff repeats and realleges the allegations of paragraphs 1 through 95 above.

97.      By reason of the Defendant's failure to pay Plaintiff benefits as due under the terms of the Plan, Plaintiff has been forced to retain attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorney's fees.  Plaintiff is entitled to recover reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, **Plaintiff demands judgment for the following:**

A.      Grant Plaintiff declaratory relief, finding that she is entitled to all past due long term disability benefits yet unpaid;

B.      Order Defendant to pay past due long term disability benefits retroactive to February 3, 2021 through the present in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C.      Order Defendant to remand claim for future administrative review and continue to make future long term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Defendant makes an adverse determination of long-term disability consistent with ERISA

17

and Plaintiff's entitlements under the Plan;

      D.      Order Defendant to pay for the costs of this action and Plaintiff's attorney's

fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

      E.      For such other relief as may be deemed just and proper by the Court.


Dated:  Houston, Texas
        April 21, 2022


                        Respectfully submitted,

                        MARC WHITEHEAD & ASSOCIATES,
                        ATTORNEYS AT LAW L.L.P.


              By:     /s/ Selina Valdez_____
                      Selina Valdez
                          Tex. Bar No. 24121872
                          Fed. I.D. No. 3633062
                          selina@marcwhitehead.com
                      Marc S. Whitehead
                          Tex. Bar No. 00785238
                          Fed. I.D. No. 15465
                          marc@marcwhitehead.com
                      J. Anthony Vessel
                          Tex. Bar. No. 24084019
                          Fed. I.D. No. 1692384
                          anthony@marcwhitehead.com
                      Britney Anne Heath McDonald
                          Tex. Bar. No. 24083158
                          Fed. I.D. No. 2621983
                        britney@marcwhitehead.com
                      Madison Tate Donaldson
                          Tex. Bar No. 24105812
                          Fed. I.D. No. 3151467
                          madison@marcwhitehead.com

                      403 Heights Boulevard
                      Houston, Texas 77007
                      Telephone: 713-228-8888

18

Facsimile: 713-225-0940
ATTORNEY-IN-CHARGE
FOR PLAINTIFF,
DIANE OMER